IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN LUCKIEWICZ,                  :      CIVIL ACTION
                                  :      NO. 08-842
        Plaintiff,               :
                                  :
    v.                            :
                                  :
JOHN E. POTTER, Postmaster        :
General                           :
                                  :
        Defendant.               :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        NOVEMBER 20, 2009


I.    INTRODUCTION

        Plaintiff filed the instant Complaint on February 20,

2008.  On March 18, 2009, Plaintiff filed an Amended Complaint.

In Count I of the Amended Complaint, Plaintiff brings a

Rehabilitation Act claim for denial of accommodation and

transfer.[1]  Count I alleges that Defendant "involuntarily

---

[1] Plaintiff does not specify under which section of the
Rehabilitation Act he is suing. "Federal agencies may, by the
terms of the Rehabilitation Act, be sued for violation of either
section 501 or 504 of the Act." Spence v. Straw, 54 F.3d 196, 199
(3d Cir. 1995). However, because Title VII remedies are available
in actions under section 501, "a party is barred from suing a
federal agency for violation of section 501 if he or she has
failed to exhaust administrative remedies under Title VII" Id.
The Third Circuit has also held that "a plaintiff must exhaust
Title VII remedies before bringing suit under sections 504 and
505(a)(2) of the Rehabilitation Act, just as he or she must
before suing under sections 501 and 505(a)(1) of the Act." Id. at
201. Accordingly, "[b]efore an aggrieved employee may bring [a
Rehabilitation Act] claim in court against a federal employer, he
must file a claim with the EEOC." Wilson v. MVM, Inc., 475 F.3d
166, 173 (3d Cir. 2007) (citing 29 C.F.R. § 1614.105).

-1-

transferred [Plaintiff] unlawfully due to his disability and or perceived disability and denied him his request to remain at the Olney Station as an accommodation to his physical disability in violation of 29 U.S.C. § 701 et seq."  In Count II, Plaintiff brings a retaliation claim under the Rehabilitation Act.  Count II alleges that "Defendant retaliated against [Plaintiff] when the Agency involuntarily transferred him again after he commenced informal counseling."  In Count III, Plaintiff brings a disparate treatment claim, alleging that Defendant "did not allow [Plaintiff] to work overtime from September 2006 to July 2007, and on other periods thereafter to the present, because of his

---

"Therefore, a court need not pass upon the merits of a plaintiff s substantive claim until it satisfies itself that the claim is roperly before it, including determining whether the plaintiff properly exhausted administrative remedies." Wilson, 475 F.3d at 173. However, "the exhaustion requirements of the [Rehabilitation Act] are prudential," not jurisdictional. Id. at 175. Accordingly, "[f]ailure to exhaust administrative remedies in employment discrimination actions is an affirmative defense and thus 'the defendant bears the burden of pleading and proving that the plaintiff has failed to exhaust administrative remedies." Kondas v. Potter, No. 05-1861, 2008 U.S. Dist. LEXIS 71959, at *17-18 (M.D.Pa. Sep. 4, 2008) (quoting Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997)).

Here, neither party addressed the issue of exhaustion. Both parties mention Plaintiff's filing of at least one EEO complaint, which forms the basis of Plaintiff's retaliation claim. Although Defendant raised exhaustion of administrative remedies as an affirmative defense in his answer (doc. no. 3 at unnumbered seventh affirmative defense), he does not argue this point in his motion for summary judgment. Thus, even if Plaintiff has failed to exhaust his administrative remedies, the Court retains jurisdiction over this case and will proceed to review the case on the merits.

disability and or perceived disability while allowing other workers to work overtime."[2]  Plaintiff seeks damages and a return full time to the Olney postal station.

Defendant filed a motion for summary judgment, arguing: (1) Plaintiff is not a "qualified individual" under the Rehabilitation Act; (2) Plaintiff was transferred for legitimate, nondiscriminatory reasons; (3) the USPS did not fail to accommodate Plaintiff; (4) Plaintiff was not subject to disparate treatment; and (5) Plaintiff cannot establish a causal connection between his EEO complaints and his transfer to the Main Office Delivery Post Office (MOD). (Doc. no. 16 at 2, 12-28.)  For the reasons that follow, it will be granted.

## II. BACKGROUND AND RELEVANT FACTS

### A. Employment and Injury as a Letter Carrier

John Luckiewicz ("Plaintiff") is a letter carrier with

---

[2] On November 14, 2008, Plaintiff moved to consolidate his case with that of another plaintiff, Karen Strawbridge, who also alleged discriminatory treatment on the basis of disability and retaliation by the USPS. (Doc. no. 11.)  The Court denied Plaintiff's request as moot, finding that "[o]n July 22, 2009, Judge Surrick issued a memorandum opinion granting Defendant's Motion for Summary Judgment, and entering judgement in favor of the Defendant, and against Plaintiff Strawbridge (No. Civ. A. 08-2937) (docs. nos. 32 and 33).  Because Plaintiff Strawbridge's case is closed, the Court will deny the motion to consolidate the actions as moot."  Although the evidence and facts of the two cases are somewhat different, the legal issues and arguments are very similar, if not identical.  Thus, this memorandum draws much reasoning from Judge Surrick's opinion. See Strawbridge v. Potter, No. 08-2937, 2009 WL 2208577 (E.D. Pa. July 22, 2009).

the United States Postal Services ("USPS") in Philadelphia. (Doc. no. 16, Ex. A at 6, 9) (Pl.'s Dep., Feb. 10, 2009.) Plaintiff began working for the USPS in July 1997. (Id. at 6.) On February 17, 2005, Plaintiff was involved in a car accident while delivering mail. (Id. at 11.)  He sustained injuries to his legs, a broken rib, a punctured lung and neck pain. (Id. at 11-12). A few months after his injury, Plaintiff returned to work under limited and light duty. (Id. at 13, 53-54.)

Letter carriers have many duties. (Pl.'s Dep. at 8-10.) Primary among those duties are sorting (or, as USPS names it, "casing") mail for their routes and delivering the mail. (Doc. no. 16, Ex. B ¶ 3 (Decl. of J. Breslin); Pl.'s Dep. at 10.)  Each morning, before starting delivery, letter carriers spend time casing and bundling the mail for their routes. (Decl. of J. Breslin at ¶ 3.)  After casing, letter carriers spend approximately six-and-a-half to seven hours delivering the mail, which they accomplish through a combination of walking, driving, and climbing steps. (Id. at ¶ 4.) Letter carriers must be able to lift and carry bags of mail and parcels weighting over 25 pounds. (Id. at ¶ 5.)

Casing and delivering mail are considered to be two essential functions of letter carriers. (Pl.'s Dep. at 10; Decl. of J. Breslin at ¶¶ 3, 5.)  Due to Plaintiff's injury, he cannot deliver mail. (Pl.'s Dep. at 14-15; Decl. of J. Breslin at ¶ 6;

Decl. of A.C. Disante at ¶ 3.)  There is no accommodation that
the USPS could devise that would allow Plaintiff to deliver mail
along a full, regular route. (Pl.'s Dep. at 15-16, 26, 32.)
Plaintiff has never asked his supervisors for accommodations that
would allow him to deliver mail. (Id. at 66-67.)

After his injury, Plaintiff was placed on limited duty
by the USPS.[3] (Id. at 51.) Under the Limited Duty Program, the
USPS accommodates employees injured while on the job who are
temporarily unable to perform their regular functions. (Doc. no.
16, Ex. D, USPS Limited Duty Program Management Handbook 157.)
Nevertheless, throughout his employment with the USPS,
Plaintiff's job title has remained "letter carrier." (Pl.'s Dep.
at 70.) Plaintiff's salary range and union membership are based
upon his position as a letter carrier. (Doc. no. 16, Ex. B at ¶
11.

B. Limited Duty Program Positions

---

[3] The Limited Duty Program is a function of the Federal
Employee Compensation Act (FECA). FECA "establishes a federal
workers' compensation program for employees who suffer a
'disability' as a result of an on-the-job injury." Rolland v.
Potter, 492 F.3d 45, 48 (1st Cir. 2007). "Among other things,
FECA requires federal agencies to place employees in their former
positions, or in equivalent positions, following recovery from
compensable injuries." Id. (citing 5 U.S.C. § 8151)). "To fulfil
its FECA obligations to employees who suffer compensable
injuries, the USPS developed an injury compensation program that
specifically addresses the reassignment of employees injured on
the job." Id. "Under this program, employees whose on-the-job
injuries result in permanent restrictions are placed into new
rehabilitation positions through the USPS's Rehabilitation
Program." Id.

In September 2006, Plaintiff reached maximum medical improvement, according to his physician. (Doc. No. 16, Ex. H, Form CA-17 dated 9/27/06.)  Plaintiff's treating physician listed Plaintiff's medical and physical limitations as: (1) sitting for no more than two hours at a time; (2) driving, standing, walking, pushing and pulling for no more than 30 minutes a day; (3) typing, or fine manipulation, for no more than one hour a day; (4) lifting no more than 25 pounds and (5) a total prohibition on climbing. (Id.; Ex. A at 21-23.)

As required by the Limited Duty Program, Plaintiff's supervisors modified his duties based on his limitations to provide him with work her could do. (Doc. no. 16, Ex. A at 52, 70; Ex. B. at ¶¶ 8-11.)  Plaintiff could not deliver mail along a route, but was able to case mail, process certified mail notification, drive briefly to deliver express mail, pick up mail from collection boxes and bring mail to letter carriers on the street. (Ex. A. at 24-25, 28-29, 52-53; Ex. B at ¶ 10.)

During his limited duty tenure at Olney Station, Plaintiff's supervisors found it difficult to assign Plaintiff 40 hours a week of work for which he was qualified to perform. (Decl. of J. Breslin at ¶ 8; Decl. of A.C. Disante at ¶ 5.) In November 2006, after being placed in the Limited Duty Program, Plaintiff was temporarily transferred to the Main Office Delivery Post Office (MOD) to work for "Operation Santa Clause" and

returned to Olney Station in December 2006. (Ex. B at ¶ 13; Ex. A at 80.)  In February 2007, Plaintiff agreed to a temporary assignment at the William Penn Annex to assist in scanning delivery confirmation barcodes. (Ex B. at ¶ 17-19.) Plaintiff's supervisor, Ms. Julian Breslin, offered the assignment to Plaintiff because there was not enough work within his restrictions at Olney Station and believed the work at William Penn Annex would provide him with more hours. (Id.) Plaintiff returned to Olney station on or about March 19, 2007. (Ex. A at 112.)

C. Change in Overtime Usage Enforcement

Even though the USPS overtime policy was that overtime should only be given to employees when justified, the policy was not enforced in the past. (Doc. no. 16, Ex. E at ¶ 9 (Decl. of M. McKenna).) However, with the USPS in Philadelphia losing revenue because of a significant drop in the volume of mail that was processed (id. at ¶ 4), USPS officials were forced to address concerns about the cost of overtime, including overtime for disabled employees (Id. at ¶¶ 5-7).  As a result, the Philadelphia Postmaster implemented a series of measures designed to curtail overtime pay for both disabled and non disabled employees.

D. Transfer out of Olney Station

In March 2007, changes in passport requirements for air

travel generated a need for more workers to process passport applications. (Doc. no. 16, Ex. G ¶ 3 (Decl. of R. Bethune).) The Philadelphia Main Post Office, also known as Main Office Delivery ("MOD"), was responsible for processing most of these passports. (Id.) Postmaster Martin asked Philadelphia station managers to send injured employees who were not being used productively at their assigned stations to MOD to assist with the passport processing. (Id. at ¶ 4.) MOD was then located at 30th and Market Streets in Philadelphia. (Id. at ¶ 2.) Numerous other limited duty employees were transferred from other post offices in the city to assist MOD with its passport work. (Id. at ¶¶ 3-4.)

On March 23, 2007, Plaintiff's Olney Station supervisor, Station Manager Alexander C. Disante, received a request from his Area Manager, Eric Coleman, to select two injured employees to send to MOD. (Decl. of A.C. Disante at ¶ 4.) Disante offered the position to Plaintiff and another injured employee, Karen Strawbridge, because (1) there was not enough work at Olney Station to provide Plaintiff and Strawbridge with eight hours of work each day; (2) the passport work at MOD would provide them with eight hours of work each day within their restrictions; and (3) they were the two most junior employees at Olney Station. (Id. at ¶ 5.) Plaintiff accepted the position "under protest." (Doc. No. 16, Ex. K ("Offer of Modified

Assignment (Limited Duty)" dated 3/23/07.)

On March 26, 2007, Plaintiff was transferred to MOD. (Decl. of A.C. Disante at ¶ 4.) By April 2007, there were many injured employees who had been transferred to MOD in addition to Plaintiff. (Decl. of R. Bethune at ¶ 3; see also Decl. of J. Breslin at ¶ 21.) The passport work consisted mainly of sitting, scanning express priority mail and passport mail, and assisting customers with filling out passport applications. (Doc. no. 16, Ex. G at ¶ 6 (Decl. of E. Coleman).) Plaintiff performed the passport duties at MOD well and subsequently trained other employees in the passport work. (Pl.'s Dep. at 133.) While at MOD, Plaintiff received overtime. (Id. at 132.)

On February 20, 2007, while Plaintiff was assigned to the William Penn Annex, he initiated an informal EEO complaint against Ms. Breslin and Mr. Disante, based on his transfer to William Penn Annex (Doc. no. 16, Ex. M, Information for Pre-Complaint Counseling dated 2/20/07). On March 30, 2007, the Plaintiff requested an EEO REDRESS mediation for his February 20, 2007 informal complaint (Id. at. Ex. N, Agreement to Participate in REDRESS dated 3/30/07). On April 10, 2007, Plaintiff and Mr. Disante participated in a Redress mediation that was unsuccessful. (Pl.'s Dep. at 171-72; Ex. J at ¶ 9.) On May 10, 2007, Plaintiff filed a formal EEO complaint of discrimination against Mr. Disante and Ms. Breslin based on the February 10,

2007 transfer to William Penn Annex. (Doc. no. 16, at Ex. P,

Formal EEO Complaint dated 5/10/07.)  The formal complaint also

included an allegation that Mr. Disante retaliated against

Plaintiff for initiating an informal EEO complaint by

transferring plaintiff to MOD on March 23, 2007. (Id. at. Ex. Q,

Acceptance/Amendment for Investigation dated 5/17/07.).

    E. Return to Olney Station

        Plaintiff returned to Olney Station in September 2008.

(Pl.'s Dep. at 138, 144.) His duties included casing routes and

delivering express mail among other assignments. (Id. at 142,

147.) Since September 2008, he worked 3 to 4 hours-a-day and

workers compensation made up the difference between the amount he

works and the full time 40 hour work week (Doc. no. 22 at 9).


**II.   LEGAL STANDARD**

    A. Summary Judgment

        Summary judgment is proper when "the pleadings, the

discovery and disclosure materials on file, and any affidavits,

show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c).  A fact is "material" if its existence or

non-existence would affect the outcome of the suit under

governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986).  An issue of fact is "genuine" when there is

sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. Id. at 248-49. "In considering the evidence, the court should draw all reasonable inferences against the moving party." El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004) (quoting Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001)). Once the moving party has thus discharged its burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in [Rule 56]--set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

## III. ANALYSIS

A. Discrimination[4]

---

[4] Plaintiff appears to be asserting his disparate treatment claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981. (See Doc. no. 3 at ¶ 1.) However, "the Rehabilitation Act provides the exclusive means by which a

Plaintiff brings two types of discrimination claims under the Rehabilitation Act. Plaintiff claims that Defendant engaged in disparate treatment discrimination on the basis of Plaintiff's disability when it stopped him from working overtime because he was an employee on limited duty. (Doc. no. 22 at 32-37.) Plaintiff also claims that Defendant discriminated when it denied him accommodation at Olney Station and involuntarily transferred him to MOD on March 26, 2007. (Id. at 29-32.)

"The Rehabilitation Act forbids employers from discriminating against persons with disabilities in matters of hiring, placement, or advancement." Shiring v. Runyon, 90 F.3d 827, 830-31 (3d Cir. 1996). However, "[e]mployers cannot be obligated to employ persons who are incapable of performing the necessary duties of the job." Id. at 831. In order to make out a *prima facie* case of discrimination under the Rehabilitation Act, a plaintiff bears the burden of demonstrating: (1) that he or she has a disability; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job. Id. The plaintiff must make a *prima facie* showing that

litigant may raise claims of discrimination on the basis of handicap by federal agencies." Spence, 54 F.3d at 202. The Court will address Plaintiff's disparate treatment claim as a claim of discrimination under the Rehabilitation Act.

reasonable accommodation is possible. Id. "If the plaintiff is able to meet these burdens, the defendant then bears the burden of proving, as an affirmative defense, that the accommodations requested by the plaintiff are unreasonable, or would cause an undue hardship on the employer." Id.

Similarly, to establish a *prima facie* case of disparate treatment under the Rehabilitation Act, a plaintiff must show that "(1)[he] is a disabled person within the meaning of the ADA; (2)[he] is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3)[he] has suffered an otherwise adverse employment decision as a result of discrimination." Galle v. Dep't of Gen. Servs., No. 02-4622, 2003 U.S. Dist. LEXIS 4548, at *10 (E.D. Pa. Mar. 18, 2003) (quoting Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000)).

Because Defendant concedes for the purposes of this motion that Plaintiff is disabled (Doc. no. 16 at 12 n.7), the issue here is whether Plaintiff is "otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer. . . ." Shiring, 90 F.3d at 831. "[T]he burden is on the employee to prove that [he] is an otherwise qualified individual." Id. at 832 (internal quotation marks omitted). The Third Circuit has established a two-prong test to determine whether someone is a qualified

individual under the Rehabilitation Act:

First, a court must consider whether the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc. Second, the court must consider whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation. Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998).

There is no dispute that Plaintiff satisfies the first prong of the "qualified individual" test, that is, that he satisfies the prerequisites for the position. However, Defendant argues that Plaintiff "cannot perform an essential function of his job, which is the delivery of regular mail along a route." (Doc. no. 16 at 2.) Defendant argues that Plaintiff concedes he is unable to perform the essential function of delivering regular mail along a route. (Id. at 13.) In addition, Defendant argues that the USPS did not fail to accommodate Plaintiff as required under the Rehabilitation Act because he concedes that he did not ask for anything that would allow him to case or deliver mail, and that nothing exists that would allow him to perform these essential functions. (Id. at 19.)

Plaintiff responds that he is a "qualified individual" because he performed duties and functions of a letter carrier

including casing mail, delivering express mail, picking up mail from collection boxes, taking mail to relay boxes, delivering mail to Letter Carriers on their route, and working with Certified Mail notification. (Doc. no. 22 at 24.) Plaintiff states he performed those responsibilities as part of a limited duty position upon his return to the job after his 2005 accident. (Id.)

1. Essential Functions of the Job

Preliminarily, the Court must determine what job it should consider when analyzing whether Plaintiff could perform the essential functions of that job. Defendant argues that the relevant position is "Letter Carrier," because this is the position for which Plaintiff was hired and this remained Plaintiff's title throughout his tenure at the USPS. Plaintiff argues that he could perform the essential functions of his limited duty position, and that those positions are the appropriate benchmarks for the essential functions analysis.

The Court agrees with Defendant. The fact that Plaintiff was able to perform his responsibilities in the Limited Duty Program, and the fact that the USPS allowed him to perform those duties for several years, does not make Plaintiff a "qualified individual" under the Rehabilitation Act.

The Third Circuit decision in Shiring is instructive in this regard. In Shiring, the plaintiff was hired by the USPS as

a part-time flexible ("PTF") letter carrier. 90 F.2d at 829.
After the plaintiff began experiencing severe foot pain while
delivering the mail, the USPS placed him on light duty work. Id.
The plaintiff was assigned to casing mail for all carrier routes.
Id.  The plaintiff temporarily returned to delivering mail as a
letter carrier, but because of his condition, the USPS returned
him to the same modified light duty position of casing mail. Id.
at 829-30.  Several years later, the USPS determined that there
was nothing more available for the plaintiff consistent with his
medical restrictions. Id. at 830.  The plaintiff argued that he
was otherwise qualified for the position of PTF letter carrier
because he had been able to perform the duties of the modified
assignment. Id. at 831.  The court held that "[t]he 'casing'
position to which he was temporarily assigned was not an official
position, but had been created by the Postal Service to give [the
plaintiff] something to do on a temporary basis." Id.  Therefore,
the fact that the plaintiff "would have been qualified to perform
the requirements of such a position does not help his case
because under the Act employers are not required to create
positions specifically for the handicapped employee." Id. (citing
Fedro v. Reno, 21 F.3d 1391, 1395 (7th Cir. 1994)).

        As in Shiring, the limited duty work that Plaintiff
performed at Olney Station, and other temporary assignments at
USPS facilities, did not constitute an official position. Rather,

this limited duty work was created precisely because his injuries prevented him from performing the duties of his official position: Letter Carrier. Since the USPS was not required to create a new position for Plaintiff when he was injured, see Shiring, 90 F.3d at 831, and since Plaintiff was never reassigned to another vacant, funded position that would supplant his letter carrier job, the Court will consider the "qualified individual" prong with reference to Plaintiff's official position as a letter carrier.

The Third Circuit has found that "[o]ne of the essential functions of a mail carrier is to physically deliver the mail to the people along the route." Id. Plaintiff admits that his medical and physical restrictions make it impossible for him to deliver the mail. Accordingly, the Court must determine whether any reasonable accommodation would allow Plaintiff to perform the essential duties of a letter carrier, that is, delivering mail.

2. Reasonable Accommodation

"An employee can succeed under the Rehabilitation Act only if the employee can demonstrate that a specific, reasonable accommodation would have allowed her to perform the essential functions of her job." Donahue v. Consol. Rail Corp., 224 F.3d 226, 232 (3d Cir. 2000) (internal quotation marks omitted). "Thus, employers are not required to modify the essential

functions of a job in order to accommodate an employee." Id.
Furthermore, "[a]n employer's obligation to provide a reasonable
accommodation does not require the employer to create a new job."
Donahue, 224 F.3d at 230 (citing Mengine v. Runyon, 114 F.3d 415,
417 (3d Cir. 1997)).

The parties do not dispute that no amount of
accommodation on the part of the USPS would allow Plaintiff to
perform his duties as a letter carrier. See Shiring, 90 F.3d at
831. Plaintiff testified in his deposition that he could not
deliver mail along his route after the 2005 accident (Pl.'s Dep.
at ¶¶ 14-16.) Plaintiff also testified that he was not aware of
anything USPS could have done to allow him to deliver mail. (Id.)
Plaintiff also repeatedly testified that he did not ask USPS to
assist him or make other accommodation to help him deliver mail.
(Id. at ¶¶ 16, 26, 66.)

Furthermore, Plaintiff's request to remain at Olney
Station doing limited duty work was not, as he argues, a request
for "reasonable accommodation." (See Doc. no. 22 at 26 ("How can
Defendant claim Plaintiff did not request an accommodation when
he asked to be allowed to continue performing the Letter Carrier
duties he was performing for more than a year while he was on
limited duty[?]").)  The limited duty work was not an
accommodation because it did not allow Plaintiff to perform the
essential functions of his position as a letter carrier. See

Shiring, 90 F.3d at 831 (finding that "the district court did not err in refusing to consider the non-existent position of 'caser' as an accommodation that would make [the plaintiff] qualified"); accord Antol v. Perry, 82 F.3d 1291, 1299 (3d Cir. 1996) ("[R]easonable accommodation refers to affirmative efforts which the employer must make in order to ensure that an employee can perform the essential job functions.").[5]

The requests Plaintiff describes - to stay at Olney station, to deliver express mail, to work on certified mail notifications, to pick up collections - are not "accommodations" within the meaning of the Rehabilitation Act because they would not have enabled Plaintiff to perform the essential function of

_____

[5] See also Gantner v. Potter, No. 03-644, 2007 U.S. Dist. LEXIS 82815, at *9-10 (W.D. Ky. Nov. 7, 2007) (finding that where the position of "Window Clerk Modified" was offered to the plaintiff by the USPS pursuant to FECA, and where there was no evidence indicating that the position would have existed if not for FECA requirements, the position could not be characterized as a "reasonable accommodation" under the Rehabilitation Act); Rio v. Runyon, 972 F. Supp. 1446, 1458 (S.D. Fla. 1997) (finding that plaintiff who could not deliver the mail was not entitled to "indefinite temporary light duty" and that "[a]lthough the Postal Service did permit Plaintiff only to case the mail on a temporary basis, that discretionary act does not require the Postal Service to maintain such a position as a reasonable accommodation"); Sidaris v. Runyon, 967 F. Supp. 1260, 1267-68 (M.D. Ala. 1997) (finding that where the USPS assigned injured plaintiff to light-duty, which required her to case her route but not deliver mail, the USPS was "not, as a matter of law, required by the [Rehabilitation] Act to assign Plaintiff to permanent light-duty or continuing temporary light-duty position" as a reasonable accommodation because "[a]n employer has no duty to create a new light-duty position in order to accommodate a handicapped employee").

his job of delivering mail along a regular route.  The Court is
satisfied that Plaintiff could not perform the essential
functions of his job and that no reasonable accommodation was
available.

### 3. Reassignment

Although an employer is not required to create a new
job for a disabled individual, "an employer may be required to
transfer an employee to an existing position." Donahue, 224 F.3d
at 230 (citing Mengine, 114 F.3d at 418; Shiring, 90 F.3d at
832); see also Shiring, 90 F.3d at 832 (finding that courts must
consider "whether reassignment is possible in determining whether
an individual seeking relief under the Rehabilitation Act is an
otherwise qualified individual"). "The reassignment should be to
an already funded, vacant position within the same commuting
area, and at the same grade or level." Shiring, 90 F.3d at 832
(citing 29 C.F.R. § 1614.203(g)). When a plaintiff challenges an
employer's failure to transfer, the plaintiff must demonstrate:
(1) that there was a vacant, funded position; (2) that the
position was at or below the level of the plaintiff's former job;
and (3) that the plaintiff was qualified to perform the essential
duties of this job with reasonable accommodation. If the employee
meets [his] burden, the employer must demonstrate that
transferring the employee would cause unreasonable hardship.
Donahue, 224 F.3d at 230 (citing Mengine, 114 F.3d at 418;

<u>Shiring</u>, 90 F.3d at 832).

Here, neither party addressed the issue of reassignment.  Plaintiff did not seek reassignment, and Plaintiff does not allege that the USPS failed to transfer or reassign him to another position.  Nor has Plaintiff shown that there were any vacant, funded positions at an equivalent level or position as his letter carrier position.  Rather, the only "accommodation" that Plaintiff seeks is to be permanently assigned to Olney Station performing limited duty work for 40 hours per week, plus overtime.  However, as already explained, such "accommodation" would effectively require the USPS to create an alternative position for Plaintiff, which it is not required to do. Even if Plaintiff were challenging the USPS on the basis of a failure-to-transfer, the Court finds that Plaintiff has not carried his burden of demonstrating that there were appropriate vacant, funded positions. <u>See</u> <u>Shiring</u>, 90 F.3d at 832 ("A plaintiff seeking relief under the Rehabilitation Act must demonstrate what reasonable accommodation he or she contends the employer should have made, including an identification of the positions the employer should have considered for reassignment.").

\*    \*    \*

Accordingly, Plaintiff's discrimination claims - disparate treatment, denial of accommodation, and involuntary

transfer - under the Rehabilitation Act must fail.


### B. Retaliation Claim[6]

Plaintiff claims that his transfer from Olney Station
to MOD in March 2007 was in retaliation for Plaintiff's
participation in protected activity, that is, filing an informal
EEO complaint (informal counseling) in February 2007.[7] (Doc. no.
22 at 29-31.) Defendant moves for summary judgment on this claim,
arguing that Plaintiff cannot establish a causal connection
between his EEO activity and his transfer to MOD because "there
is no evidence that [his supervisors were] aware that the
plaintiff engaged in protected activity prior to his March 23,
2007 transfer to MOD." (Doc. no. 16 at 25.)

---

[6] Plaintiff's failure to establish that he is a "qualified
individual" under the Rehabilitation Act does not preclude him
from recovering on a claim of retaliation. See Krouse v. Am.
Sterilizer Co., 126 F.3d 494, 498 (3d Cir. 1997) (cited in Ozlek
v. Potter, 259 Fed. App'x 417, 421 (3d Cir. Dec. 19, 2007) (non-
precedential opinion)).


[7] Plaintiff lists the following as adverse employment
actions suffered as retaliation: "He was transferred to another
work location. He was not permitted to work overtime, he had to
travel longer to get to work, he did not have parking nearby, and
he had to start work much earlier, i .e., 3:00 A.M. as supposed
[sic] to 6:00 A.M." (Doc. no. 22 at 30.) Plaintiff's allegation
that the USPS retaliated by not permitting him to work overtime
does not make any sense. According to Plaintiff's retaliation
theory, the withholding of overtime was not retaliation, but
rather the impetus for Plaintiff's complaints, which led to the
retaliation by transfer. Moreover, it is undisputed that after
having been moved to MOD, Plaintiff received overtime in the
summer of 2007. (Pl.'s Dep. at 132.)

To survive summary judgment on a claim of retaliation under the Rehabilitation Act, a plaintiff must satisfy his burdens under the McDonnell Douglas framework.  To establish a *prima facie* case of retaliation under the [Rehabilitation Act], a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. . . . If an employee establishes a *prima facie* case. . . the burden shifts to the employer to advance a legitimate, non-retaliatory reason for it adverse employment action. . . . If the employer satisfies its burden, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action. Krouse, 126 F.3d at 500 (internal citations omitted); see also Strawbridge v. Potter, No. 08-2937, 2009 WL 2208577 (E.D. Pa. July 22, 2009) (applying Krouse to retaliation claim under the Rehabilitation Act).

In order to establish a causal connection, a plaintiff must demonstrate either (1) a temporal proximity between the two events that is "unusually suggestive" of retaliation, see Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004), or (2) timing plus other evidence, such as

evidence that the employer engaged in a "pattern of antagonism" with the plaintiff, see Robinson v. Se. Pa. Transp. Auth., 982 F.2d 892, 895 (3d Cir. 1993) (A "pattern of antagonism" existed because the employer engaged in a "constant barrage of written and verbal warnings . . ., inaccurate point totalings, and disciplinary action, all of which occurred soon after plaintiff's initial complaints and continued until his discharge.") (internal quotation marks omitted).

1. Timing

Timing alone is normally insufficient to raise an inference of causation. See Weston v. Pennsylvania, 251 F.3d 420, 431 (3d Cir. 2001) (holding that timing is rarely sufficient to raise an inference of causation). The Third Circuit has recognized that causation may be established by timing alone where the adverse employment action follows within days of the complaint of discrimination. See Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (holding that timing of termination two days after employer learned of EEO complaint raised inference of causation).

However, in Williams, the Third Circuit found that a period of two months was not "unusually suggestive" of retaliation. 380 F.3d at 760. Other courts have also found that time periods as short as two months, without additional evidence, are not "unnecessarily suggestive" to demonstrate causation. See

Washco v. Fed. Express Corp., 402 F. Supp. 2d 547, 560 (E.D. Pa. 2005) (five months); Zappan v. Pa. Bd. of Probation & Parole, No. 00-1409, 2002 WL 32174230, at *10 (E.D. Pa. Nov. 25, 2002) (two months); Pritchett v. Imperial Metal & Chema. Co., No. 96-0342, 1997 WL 570929, at *4 (E.D. Pa. Sept. 8, 1997) (two months).

Plaintiff argues that "Plaintiff had complained about being transferred out of the Olney station in his first EEO Complaint and shortly upon returning to Olney Station he is transferred again out of Olney. Also, one of the individuals involved in Plaintiff's first EEO complaint was involved in Plaintiff's transfer out of Olney Station." (Doc. no. 22 at 31-32.) Plaintiff filed an informal EEO complaint in February 2007, and his employer's adverse action, transferring him to MOD, occurred in March 2007, only a month after the alleged complaint.

Here, the period between the participation in the protected activity and the adverse employment action falls halfway in between the two day time period, where the Third Circuit has found an inference of retaliation, and two month time period where the Third Circuit did not find an inference of retaliation. In the absence of any other supportive evidence, under these circumstances, Plaintiff raises, at best, a weak inference suggestive of retaliation.

2. Pattern of Antagonism

Plaintiff has provided no evidence of a "pattern of

antagonism" that would suggest retaliatory animus on the part of Plaintiff's supervisors. As Defendant points out, Plaintiff admits that he was "welcomed back" to Olney Station by Mr. Disante on March 19, 2007 - well after he engaged in protected activity. (Pl.'s Dep. at 114.)

### 3. Supervisors' Awareness of Protected Activity

There is no evidence that Plaintiff's supervisors were aware that Plaintiff had engaged in protected activity prior to his March 23, 2007 transfer to MOD. Mr. Disante and Ms. Breslin have both declared that they had no knowledge of Plaintiff's February 20, 2007, informal EEO complaint prior to his transfer (Doc. no. 16, Ex. B at ¶¶ 22-24; Ex. J at ¶¶ 6-8). Rather, both supervisors only claim to have learned about the EEO complaint after Plaintiff was transferred and requested mediation on March 30, 2007, and these statements have not been challenged by Plaintiff. Finally, on Plaintiff's May 10, 2007, formal EEO complaint he indicated that Mr. Disante knew of his prior EEO activity from his presence at the April 10, 2007 redress hearing which occurred after the alleged retaliatory transfer. (Doc. no. 16, Ex. Q.)

\*    \*    \*

Even assuming, *arguendo*, that Plaintiff is able to establish a *prima facie* case of discrimination or retaliation, Defendant is nevertheless entitled to summary judgment, as it has

produced a legitimate nondiscriminatory reason for transferring

Plaintiff.[8]  Plaintiff has failed to provide any evidence

rebutting Defendant's legitimate, non-retaliatory reasons for

transferring Plaintiff.  Plaintiff has not shown that this

explanation is false and that retaliation was the real reason

that Plaintiff was transferred.[9]  Accordingly, the Court finds

that Plaintiff's retaliation claim cannot survive summary

judgment.


IV. CONCLUSION

        For all of these reasons, the Court will grant

Defendant's Motion for Summary Judgment to all claims. An

appropriate order will issue.

---

[8] Defendant explains that Plaintiff's station manager
selected Plaintiff to be transferred to MOD because: (1) there
was an unprecedented number of passports to be processed in March
2007; (2) the Philadelphia Postmaster asked for injured employees
who were not being used effectively at their stations to be sent
to MOD; (3) Olney Station's manager selected Plaintiff and
another individual because there was not enough work at Olney
Station within their medical restrictions; (4) he believed that
the passport work at MOD would be within their restrictions and
provide them with more hours; and (5) because they were the two
most junior employees at Olney Station. (Doc. no. 16 at 27; Ex. J
at ¶ 5.)


[9] Plaintiff argues that there was enough work at Olney
Station, and as proof offers that "Mr. Bill Isaac, Union Shop
Steward at the Olney Station, who told Plaintiff that when he was
away from Olney Station, other Letter Carriers would performed
[sic] his duties." (Doc. no. 22 at 8.)  This statement is
inadmissible as hearsay and Plaintiff does not point to anything
else in the record that supports this assertion.